UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LAWRENCE C. WILLIAMS,                 §
TDCJ #02019403,                       §
                                      §
            Plaintiff,                §
VS.                                   §      CIVIL ACTION NO. H-17-3905
                                      §
CALVIN WELLER, *et al*,               §
                                      §
            Defendants.

## MEMORANDUM AND ORDER

Plaintiff Lawrence C. Williams ("Plaintiff"), a state inmate incarcerated in the Texas Department of Criminal Justice ("TDCJ"), has filed this civil rights complaint under 42 U.S.C. §1983. In his pleadings, which include several amendments and a supplement to his Complaint, Plaintiff sues numerous TDCJ officials or employees at three different TDCJ units. [Doc. Nos. 1, 7, 10, 47]. Plaintiff alleges that officials at the Ellis Unit poisoned him, posted a video on social media depicting him masturbating, and deprived him of food in retaliation for filing grievances; officials at the Eastham Unit allegedly retaliated against him, subjected him to filthy and/or hazardous environmental conditions, withheld medical care and medicine, denied his grievances, and interfered with mail; and officials at the Estelle Unit did not send him legal materials promptly. [Doc. Nos. 1, 7, 10, 47].

The Court ordered the Office of the Attorney General, as *amicus curiae*, to respond to Williams's request for injunctive relief and to submit a *Martinez* Report to provide information and evidence regarding Williams's claims. [Doc. No. 20]. The Office of Attorney General submitted a response to Williams's request for injunctive relief [Doc. No. 28] and a *Martinez*

Report [Doc. No. 43] under seal, which included Plaintiff's medical records and affidavits from a medical professional and other professionals at the TDCJ regarding Plaintiff's case. Because the *Martinez* report contains legal arguments and refers to exhibits and matters outside the pleadings, the Court converted that report to a motion for summary judgment under Federal Rule of Civil Procedure 56 and notified Williams that the *Martinez* Report was a motion for summary judgment. [Doc. No. 50]. In that same Order, the Court granted Williams's motion to amend [Doc. No. 47] and ordered Williams to file a response to the *Martinez* Report by September 14, 2018. [*Id.*] Although Williams has not filed a formal response to the *Martinez* Report, he has filed numerous filings and motions, repeatedly requesting leave to amend his complaint. [Doc. Nos. 52, 54, 55, 62, 64, 66, 67, 69, 75, 79]. He has filed two motions for appointment of counsel, [Doc. Nos. 56, 76], and numerous motions for some form of injunctive relief [Doc. Nos. 18, 29, 48, 53, 58, 60, 65, 71]. He has also filed motions for summary judgment, [Doc. Nos. 59, 81], a motion for a hearing [Doc. No. 80], and several letters. The Court has considered all of the pleadings, motions, evidence, and applicable law and concludes as follows.

## I.  BACKGROUND

Plaintiff's claims regarding prison conditions, lack of medical attention, and retaliation span three units and name 26 Defendants: (1) Sergeant Calvin Weller (Ellis Unit) ("Weller"); (2) Captain Curtis D. Bridges (Ellis Unit) ("Bridges"); (3) Warden Charles Landis (Ellis Unit) ("Landis"); (4) Sergeant Michael C. Wonderluch (Ellis Unit); (5) Dr. James S. Coleman (Ellis Unit) ("Dr. Coleman"); (6) Correctional Officer Kate M. Buckmaster (Ellis Unit) ("Buckmaster"); (7) Correctional Officer Taylor J. Greedis; (8) Correctional Officer Henry J. Vickers; (9) Correctional Officer Kayana N. Bradford (Ellis Unit) ("Bradford"); (10) Correctional Officer Tawardras Barfield; (11) Sergeant Dwight D. Summerville; (12)

Correctional Officer Cornelius R. Dickey ("Dickey"); (13) Nurse Misty Cockerham-Williams (Ellis Unit) ("Cockerham-Williams"); (14) Administrative Assistant Eula C. English; (15) Correctional Officer Teliferio Williams, Jr. (Ellis Unit) ("Teliferio"); (16) Dale Sanchez; (17) Sergeant Eris S. Vasquez; (18) Correctional Officer Kimberly K. Striblin; (19) Lieutenant Salvador Villanueva; (20) Correctional Officer Trevor A. Payne; (21) Correctional Officer John-Michael K. Price (Eastham Unit) ("Price"); (22) Assistant Administrator Kentrius L. Lockhart ("Lockhart"); (23) Grievance Investigator Delores S. Washington (Eastham Unit) ("Washington"); (24) Dr. Elizabeth Ngassa (Eastham Unit) ("Dr. Ngassa"); (25) Medical Practitioner Mark Roberts; and (26) Correctional Officer John D. Dunn.[1]

Plaintiff alleges that in the late afternoon of February 5, 2017 during mealtime at the Ellis Unit, he felt very ill and made complaints about headaches and blurry vision to Calvin Weller ("Weller") and Teliferio Williams ("Teliferio"). [Doc. No. 1 at 2]. Plaintiff alleges that when he requested permission to go to the medical department, Weller told him to shut up or he would beat him. [*Id.*]. Plaintiff recounts that he defecated on himself and had a hard time standing and retaining balance to walk. [*Id.*]. When dinner was over, Weller and Teliferio took him to the medical department. [*Id.*]. There, nurse Cockerham-Williams checked his temperature, which registered at 102.5 degrees. [*Id.*]. She gave him a lay-in to see a doctor for the next day. [*Id.*].

On February 6, 2017, Dr. Coleman examined Plaintiff and told him that it looked like Plaintiff had a cold or the flu. [*Id.*]. He gave Plaintiff chlorpheniramine maleate, non-aspirin, and medical salts to help him stop vomiting. [*Id.*]. Plaintiff recounts that he had uncontrollable bowel movements, but that Coleman told him he would be all right and to stay warm under the blankets. [*Id.* at 2-3]. Plaintiff was sent back to his cell, and on February 13 or 14, 2017, saw

---

[1] Where discernible from the pleadings, the unit where each defendant is employed is indicated.

another medical provider, Dr. Jackson. [*Id.* at 3]. Jackson stated that Plaintiff had the cold or flu in his lungs and prescribed thirty days of amoxicillin. [*Id.*]. Plaintiff lost 37 pounds that first month he fell ill. [*Id.*].

On or around April 23, 2017, Plaintiff had x-rays of his lungs. [*Id.* at 4]. He alleges that the doctor noticed something on the x-rays but did not tell him at the time. On May 1, 2017, Plaintiff was transported to the University of Texas Medical Branch ("UTMB") Galveston for CT scans. [*Id.*]. The CT scans revealed that Plaintiff had solid nodules in both lungs, but his central airway was unremarkable. He also had bulky lymphadenopathy throughout his mediastinum, both hilar regions of his neck, and his upper abdomen. [*Id.*]. Medical providers also performed a flexible bronchoscopy and an endobronchial ultrasound of his transbronchial region. [*Id.*]. He was discharged from UTMB Galveston after the tests, but no doctors talked to him about the results at that time. [*Id.* at 4-5].

Back at the Ellis Unit, Plaintiff had another appointment with Dr. Coleman, who showed Plaintiff the scans and the updated radiology notes. [*Id.* at 5]. The scans looked like white clouds and dust particles that made a trail from his neck to his chest and stomach. [*Id.*]. Plaintiff saw black dots or spots on both lungs and asked Coleman what those were. [*Id.*]. Coleman allegedly told him that he had nodules or cancer and that he did not know where it came from. Coleman then asked Plaintiff about his medical history and if any of his family members had cancer. [*Id.*].

On June 5, 2017, Plaintiff saw a doctor via Digital Monitoring Screen, or DMS. [*Id.* at 6]. This doctor clarified that Plaintiff did not have cancer, but that he thought Plaintiff had sarcoidosis. [*Id.*]. After the DMS consultation, Plaintiff asked Coleman why he was not on medical chain to Galveston, and Coleman stated that he did not know. [*Id.*]. When Plaintiff saw

Coleman again on June 6, 2017, Coleman ordered a TB test for Plaintiff, which came back negative. [*Id.*].

Plaintiff also alleges that Correctional Officer Dickey retaliated against him by calling him a "snitch." [*Id.* at 8]. He states that Dickey gave broken glass from a window to other offenders. [*Id.*]. On or around June 14, 2017, Plaintiff spoke with Mental Health Mental Retardation Authority ("MHMRA") Dr. Bonny Brocato. He stated that his illness made him weak and that he felt he could not defend himself in prison. He also told her that he is not a snitch and wanted his name cleared. [*Id.*].

On June 15, 2017, Plaintiff saw Dr. Maurice Willis, a UTMB cancer doctor. [*Id.* at 6]. Willis discovered more nodules in Plaintiff's abdomen and pelvis and ordered a second CT scan to cover those areas. [*Id.*]. The CT scan revealed that Plaintiff has multiple semisolid nodules in both lung bases and that he has lymphadenopathy in the lung hila, upper abdomen, and peritoneum. [*Id.* at 7].

Plaintiff alleges that it was about this time that he "became aware" that his illness was the result of Weller poisoning him. [*Id.* at 8]. He claims that this illness grew stronger the more grievances he would file. [*Id.*]. He alleges that, in retaliation for writing grievances, Warden Landis and Assistant Warden Bridges gave Weller a videotape of Plaintiff masturbating in his cell in another unit. [*Id.*; Doc. No. 7 at 3]. Weller allegedly posted the video on social media with the help of Defendants Bradford and Teliferio. [Doc. No. 10 at 5-6]. Plaintiff alleges further that, because of the video, Defendant Buckmaster, who was serving food, refused to serve him his breakfast one day and told him that "gays don't eat" besides "dick." [Doc. No. 1 at 8-9].

On July 8, 2017, Plaintiff was transferred from the Ellis Unit to the Eastham Unit. [*Id.* at 9]. He alleges that unspecified retaliation continued at the Eastham Unit and that he was

subjected to unsanitary food, filthy living conditions, and intermittent noxious odors emanating from pipes in the various cells where he was confined. [*Id.* at 12; Doc. No. 47-1 at 1]. On July 20, 2017, he went back to UTMB Galveston and saw Dr. Rohit Venkatesan, who did his bloodwork. Plaintiff voiced concerns about what caused his illness, and Dr. Rohit stated that they were working hard to figure it out. [Doc. No. 1 at 9].

One day on the Eastham Unit, Plaintiff was reading medical policies when Correctional Officer Price walked by his cell and said, "all that study law gotta get you hurt over here." [*Id.*]. Plaintiff states that he quickly wrote a grievance against Price. [*Id.*].

On August 9, 2017, Plaintiff returned to UTMB Galveston and saw Dr. Emilio Gonzales, who ordered medication based on the CT scans. [*Id.* at 9-10]. Gonzales ordered a multivitamin, naproxen, and Ranitidine (a histamine-2 blocker that functions as an antacid). [*Id.* at 10]. When Plaintiff returned to the Eastham Unit, Dr. Elizabeth Ngassa allegedly denied him his anti-seizure medication and blood pressure medication. [*Id.* at 10, 13]. On August 16, 2017, Plaintiff returned to UTMB Galveston for a third CT scan, which revealed that Plaintiff had extensive cervical lymphadenopathy. [*Id.* at 10].

In late August and early September 2017, Plaintiff was at the Estelle Unit. [Doc. No. 1 at 11]. He claims that staff at the Estelle Unit library denied his request for legal materials. [*Id.* at 12]. On September 26, 2017, Plaintiff wrote a grievance complaining that Correctional Officer Tomlinson, who is not named as a defendant in this case, had placed him in a filthy cell with urine on the walls and mattress. [*Id.*]. He claims that Tomlinson had refused to clean it or provide Plaintiff with cleaning supplies to clean the cell. Plaintiff also alleges that officials denied him his legal mail from attorneys Tommy Lafon and Stephen Ligon. [*Id.*].

On September 7, 2017, Plaintiff was transported back to the Eastham Unit by van. [*Id.* at

13]. He alleges that the retaliation against him continued, with rumors resurfacing about him being gay, a snitch, and crazy. [*Id.*]. He alleges that as a Muslim, being called gay causes him problems and that being called a snitch places his life in danger. [*Id.*].

Plaintiff also alleges that Delores Washington, an administrator at the Eastham Unit, denied his grievances regarding the Estelle Unit and his medical grievances, even though they were not addressed to her department. [Doc. No. 10 at 6]. Plaintiff seeks a preliminary and permanent injunction ordering the defendants to "take ownership of their action," compensatory damages, punitive damages, costs, and any other relief the Court deems just and proper. [Doc. No. 7 at 5-6].

## II. LEGAL STANDARDS

### A. Prison Litigation Reform Act

The complaint in this case is governed by the Prison Litigation Reform Act ("PLRA"). The district court reviews a complaint in a civil action in which a prisoner seeks redress from a governmental entity, officer, or employee of a governmental entity. 28 U.S.C. § 1915A(a). On review, a court must identify cognizable claims or dismiss the complaint or any portion thereof, if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In conducting that analysis, a court reviews a prisoner's *pro se* pleading under a less stringent standard than those drafted by an attorney and construes it liberally, including all reasonable inferences which can be drawn from it. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A complaint lacks an arguable basis in law if

it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (citations omitted)).

A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002). Under that standard, courts must assume that a plaintiff's factual allegations are true, and a dismissal is proper only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Id.* (citations omitted). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B.     Summary Judgment

The Court has construed the *Martinez* report filed by the Attorney General's Office as a motion for summary judgment on behalf of the defendants. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to provide "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the movant meets this initial burden, the non-movant must go beyond the pleadings and designate specific facts

showing that there is a genuine issue of material fact for trial. *See Celotex*, 477 U.S. at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "'[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation.'" *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (quoting *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

## C. **Preliminary Injunction**

To obtain a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve

the public interest. *Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005). For a permanent injunction to issue, the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. *Dresser– Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847–48 (5th Cir. 2004).

Injunctive relief in the form of "superintending federal injunctive decrees directing state officials" is an extraordinary remedy. *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985). Emphasizing its extraordinary character, the Fifth Circuit has cautioned that an injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *PCI Transportation Inc. v. Fort Worth & Western Railroad Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (citations omitted).

## III.   DISCUSSION

### A.   Motions to Amend

Plaintiff has filed several amendments and supplements to his complaint, some of which have been considered part of his pleadings. [*See* Doc. Nos. 1, 7, 10 & 47]. Plaintiff has also filed numerous "motions to amend" that are pending. [Doc. Nos. 52, 54, 55, 62, 64, 66, 67, 69, 75, 79]. Plaintiff has been specifically advised that any motion to amend a complaint MUST be accompanied by a proposed amended complaint. [*See* Doc. No. 16 ¶ 6]. Nonetheless, Plaintiff has not attached a complete proposed amended complaint to any of the pending motions to amend, in contravention of the Court's previous orders. Accordingly, his pending motions to amend [Doc. Nos. 52, 54, 55, 62, 64, 66, 67, 69, 75, 79] are **DENIED.**

### B.   Motions for Preliminary Injunctive Relief are Moot

Plaintiff has filed several motions for preliminary injunctions, seeking relief regarding conditions at the Eastham Unit, claiming that he has been subjected to unsanitary conditions and

contaminated food at that unit. The pleadings reflect that Plaintiff has been transferred from the Eastham Unit and no longer is confined there. [Doc. Nos. 71, 78]. Accordingly, his claims for injunctive relief at the Eastham Unit are moot. *See Hoffman v. Thaler*, 539 F. App'x 507, 510 (5th Cir. 2013) (mem. op.); *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (holding that a claim by the prisoner-plaintiff for injunctive and declaratory relief was moot because the plaintiff had been transferred out of the unit); *see also Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (dismissing as moot plaintiff's claims due to a prison transfer). Therefore, Plaintiff's motions seeking injunctive relief [Doc. Nos. 18, 29, 48, 53, 58, 60, 65] must be **DENIED as MOOT**.

### C.      Plaintiff's Claims

#### 1.      Medical Care Claims

Plaintiff sues Defendants Cockerham-Williams and Dr. Coleman at the Ellis Unit and Drs. Ngassa and Roberts at the Eastham Unit in connection with his medical care. To the extent that Plaintiff sues these individuals for constitutionally deficient medical care, a prisoner may succeed on a claim under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates "deliberate indifference to serious medical needs" on the part of prison officials or other state actors. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The conduct alleged must "constitute an unnecessary and wanton infliction of pain" or "be repugnant to the conscience of mankind." *Id.* at 104–06 (quotation marks omitted). A prison official acts with the requisite deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

The deliberate-indifference test has both an objective prong and a subjective one. The

prisoner must first prove objective exposure to a substantial risk of serious harm. *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). To then prove subjective deliberate indifference to that risk, the prisoner must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the prisoner's health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed. *Farmer*, 511 U.S. at 837; *Harris*, 198 F.3d at 159. Deliberate indifference is an "extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires a finding that the defendant "disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the person] should have perceived but did not[.]" *Farmer*, 511 U.S. at 836–40. Absent exceptional circumstances, an incorrect diagnosis, unsuccessful medical treatment, acts of negligence, medical malpractice, or a prisoner's disagreement with his medical treatment are insufficient to meet the standard. *Domino*, 239 F.3d at 756; *Gobert*, 463 F.3d at 346. A prisoner-plaintiff must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quotation marks omitted).

"Deliberate indifference is not established when medical records indicate that the plaintiff was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015) (quotation marks and brackets omitted). The Constitution does not require that prisoners receive optimal care, and the fact that a prisoner's medical treatment "may not have been the best that money could buy" is insufficient to establish a constitutional claim. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *see also Gobert*, 463 F.3d at 349 ("[D]eliberate

indifference exists wholly independent of an optimal standard of care.").

In its *Martinez* Report, the Attorney General, as *amicus curiae*, provided extensive medical records of the medical care that Plaintiff has received at TDCJ, both at UTMB hospital in Galveston and the unit care he received from the medical provider defendants named in this case. The report also includes an affidavit of Dr. Steven Bowers as competent summary judgment evidence. Bowers testified that he reviewed Plaintiff's medical records and found that Plaintiff has received extensive medical care regarding his sarcoidosis diagnosis and treatment and that the medications he received were appropriate. [Doc. No. 43-17 at 3]. Indeed, Plaintiff himself recounts the numerous CT scans, x-rays, other tests, and frequent doctors' visits in his pleadings. Contrary to his allegations, the medical providers have attended to his medical care, conducted numerous diagnostic tests, and provided prompt treatment.

In sum, Plaintiff does not plead facts to show that Cockerham-Williams, Dr. Coleman, Dr. Ngassa, or Dr. Roberts refused to treat him, ignored his complaints, or intentionally treated him incorrectly. Plaintiff recounts that Cockerham-Williams treated him the day he became ill and referred him to a doctor, Dr. Coleman. Plaintiff also states that Dr. Coleman evaluated him, gave him medicine and a blanket, and told him to try to stay warm. Although Plaintiff alleges that Dr. Ngassa did not give him some of his medications, the uncontroverted expert testimony from Dr. Bowers indicates that Plaintiff's chart was reviewed on December 1, 2017 at the Eastham Unit, and medical providers concluded that nonsteroidal anti-inflammatory drugs, or NSAIDS, should be stopped and the steroid therapy should begin, per the recommendation of the Galveston specialists. *Id.* at 4. Dr Bowers explains that Plaintiff's prescriptions for NSAIDS were discontinued because they would negatively interact with his medications for sarcoidosis. *Id.* Plaintiff does not submit evidence to raise a fact issue that Ngassa intentionally treated him

incorrectly when she determined that certain of his medications should be discontinued based on drug interactions and negative effects on his conditions. Further, Plaintiff's claims that Dr. Roberts was not relocating him to another unit appear to be moot because Plaintiff is no longer at the Eastham Unit.

In any case, Plaintiff's disagreement with the medical professionals like Dr. Ngassa and Dr. Roberts, regarding where a prisoner should be housed for medical care or the discontinuation of some of his medications based on their negative interactions with his medical condition are "classic example[s] of medical judgment." *Gobert*, 463 F.3d at 346 (citations omitted). The medical records reflect that Plaintiff had multiple medical conditions that required numerous medications. The doctors determined which medications should be used and which ones should be discontinued in order to avoid negative interactions. An inmate's dissatisfaction or disagreement with the medical treatment he received, or that the treatment was negligent or the result of medical malpractice, does not in itself state a claim for deliberate indifference in violation of the Eighth Amendment. *See, e.g., Wilson v. Seiter,* 501 U.S. 294, 297 (1991) (assertions of inadvertent failure to provide medical care or negligent diagnosis are insufficient to state a claim); *Norton v. Dimazana,* 122 F.3d 286, 291-92 (5th Cir.1997) (holding an inmate's dissatisfaction with the medical treatment he receives does not mean that he suffered deliberate indifference); *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir.1991) (holding inmate's "disagreement with his medical treatment" was insufficient to show Eighth Amendment violation); *Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir.1979) (finding "[m]ere negligence, neglect, or medical malpractice is insufficient" to show Eighth Amendment violation).

Plaintiff does not raise a fact issue that any of his medical providers' medical decisions to discontinue some of his medications or the decision to house him at the Eastham Unit were made

with deliberate indifference to his serious medical needs. He does not controvert Bower's expert testimony that Ngassa discontinued the NSAIDS because they would have negatively interacted with his steroid therapy for the sarcoidosis. At most, Plaintiff has stated a claim of negligence, malpractice, or disagreement with treatment, which are insufficient to support a finding of deliberate indifference under the Eighth Amendment. *See Varnado*, 920 F.2d at 321; *see also Nunley v. Mills*, 217 F. App'x 322, 324 (5th Cir. 2007) (holding that being prescribed the wrong medication did "not support a finding of deliberate indifference under the Eighth Amendment"). Plaintiff does not produce any evidence to indicate that any of the named medical providers—Dr. Coleman, Nurse Cockerham-Williams, Dr. Ngassa, or Dr. Roberts—refused to treat him, ignored his requests for medical care, intentionally treated him incorrectly, or otherwise exhibited deliberate indifference to his serious medical needs. Accordingly, Dr. Coleman, Nurse Cockerham-Williams, Dr. Ngassa, and Dr. Roberts are entitled to summary judgment on Plaintiff's medical deliberate indifference claims.

### 2. Denial of Grievances by Washington

Plaintiff complains that Washington, a non-medical TDCJ employee, should not have denied his grievances and was unqualified to do so because they related to claims that were not at her unit or not in her department. Plaintiff does not have a constitutional right to have his grievances resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Accordingly, the claim against Washington must be dismissed as frivolous. *See id.*

### 3. Retaliation—Weller, Landis, Bridges, Bradford, and Dickey

It is well established that a prison official may not retaliate against an inmate for complaining through proper channels about a prison official's misconduct. *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). However, a prisoner's personal belief that retaliation must have

been the reason for the adverse action is insufficient to state a valid claim under section 1983. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). "Causation requires a showing that but for the retaliatory motive the complained of incident . . . would not have occurred." *Id.* (internal quotation marks and citations omitted).

Plaintiff alleges that, in retaliation for filing multiple grievances, Landis and Bridges gave Weller a videotape, which had been recorded when Plaintiff was confined at the Dominguez Unit, depicting Plaintiff masturbating in his cell. Plaintiff claims further that Weller, with assistance from Bradford and Teliferio, posted the video on social media as part of the retaliation. [Doc. No. 10 at 6]. Plaintiff also alleges that Weller poisoned him in retaliation for filing grievances against him, and that Dickey called him a snitch and gave glass from a broken window to other offenders, which Plaintiff believes put in Plaintiff's food. Taking the allegations as true, the Court concludes that an answer is needed from Weller, Landis, Bridges, Bradford, Teliferio Williams, Jr., and Dickey regarding Plaintiff's retaliation claims.

### 4. **Denial of Breakfast**

Plaintiff alleges that Buckmaster denied him breakfast one day after the video was posted and taunted him regarding the video. Whether denial of food establishes a constitutional violation depends upon the amount and duration of the alleged deprivation; in general, only a "continuous and substantial denial of food" will suffice. *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998). Plaintiff does not allege that Buckmaster continuously deprived him of food or that she withheld food on more than the one occasion. Even if true, Plaintiff's allegations of

being deprived one meal does not rise to the level of a constitutional violation. *Id.*

Further, the *Martinez* Report includes competent summary judgment evidence of the meal logs, showing that Plaintiff received his meals regularly at the Ellis Unit during the relevant time period. [Doc. No. 43-3 at 2-5]. Plaintiff does not controvert this evidence. Accordingly, Plaintiff does not raise a fact issue that Buckmaster violated his constitutional rights by denying him breakfast on one occasion.

### 5.     Interference with Mail and Library Claims

Plaintiff complains that he wrote several letters to officials, such as Senator Whitmire, and Tommy Lafon, an attorney, and that he did not receive a response. He alleges that Lockhart interfered with his mail. Defendants submit mail logs that indicate that Plaintiff promptly received a letter from Lafon the day it arrived on his unit. [Doc. No. 43-5 at 3 (mail logs showing that Plaintiff received mail from attorney Tommy Lafon)]. Plaintiff does not controvert this evidence, nor does he indicate that Lockhart had any personal involvement in interfering with his mail other than Plaintiff's subjective belief that this was the case, which is insufficient to defeat summary judgment. *See Jones*, 678 F.3d at 348. Because Plaintiff does not raise a fact issue that Lockhart interfered with his mail, Lockhart is entitled to summary judgment on this claim.

Likewise, although Plaintiff claims that staff at the Estelle library refused to send him legal materials, Defendants submit evidence indicating that on September 13, 2017, the three cases Plaintiff requested were delivered to him. [Doc No. 43-5 at 4]. Plaintiff does not controvert this evidence and does not raise a fact issue regarding his mail or legal document requests. Accordingly, the claims against the library staff at the Estelle Unit do not survive summary judgment and must be dismissed.

### 6. Verbal Threats or Harassment—Price

Plaintiff alleges Price stated that all of his legal study would get him into trouble on the Eastham Unit. It is well established that verbal abuse or threats are not actionable under section 1983 and do not constitute an Eighth Amendment violation. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir. 1993)). "Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation." *Lamar v. Steele*, 698 F.2d 1286, 1286 (5th Cir.), cert. denied, 464 U.S. 821 (1983). Accordingly, the claims against Price fail as a matter of law and must be dismissed.

### 7. General Prison Conditions—Food, Odors, Pests, and Unsanitary Conditions

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Id.* (citing *Farmer*, 511 U.S. at 832). "Like other Eighth Amendment claims, a conditions-of-confinement claim must satisfy tests for both objective and subjective components." *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). In the Fifth Circuit, "extreme deprivations are required to make out a conditions-of-confinement claim" from an objective standpoint. *Id.* A prison must provide the "minimal civilized measure of life's necessities," *id.*, which encompass "the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102. From a subjective standpoint, a plaintiff alleging unconstitutional prison conditions must show that the defendant was aware of facts from which the inference of an excessive risk to the prisoner's health or safety could be drawn and that the

defendant actually drew the inference that such potential for harm existed. *Farmer*, 511 U.S. at 837.

Plaintiff alleges that at the Eastham Unit, he was subjected to unsanitary conditions, including a dead rat in his cell, contaminated food, urine on the walls and mattress in another cell where he was housed temporarily, and noxious odors that intermittently emanated from a pipe chase.

As noted previously, Plaintiff's claims for injunctive relief are moot because he is no longer confined at the Eastham Unit where the alleged unsanitary conditions occurred. To the extent that Plaintiff seeks monetary damages for the conditions at the Eastham Unit, he does not plead facts identifying any individual defendant's personal involvement in the conditions in his cells at the Eastham Unit. *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) (holding that a plaintiff bringing a section 1983 action must "specify the personal involvement of each defendant"). In other words, his pleadings do not indicate that any named defendant was aware of facts from which they could have drawn an inference that environmental conditions at the Eastham Unit were causing serious physical harm to Plaintiff and they drew that inference and did not act. *Farmer*, 511 U.S. at 837.

In addition, regarding his claims of contaminated food, Defendants submit the affidavit of Krystal Hohenbrink ("Hohenbrink"), Food Service Manager IV at the Eastham Unit, as competent summary judgment evidence. [Doc. No. 43-1 (under seal)]. Hohenbrink testified that she orders food for the Eastham Unit and that all frozen food is kept at 0□ or below, refrigerated food is kept at 40□ or below, and that all food is kept, prepared, and served at the correct temperature. [*Id.* at 2]. She also testified that all sanitary measures as set forth by TDCJ Food Service Procedures Manual are followed on the Eastham Unit, and "the food preparation and

clean-up areas are kept clean at all times." [*Id.*] Hohenbrink testified further that the unit performs daily inspections for health and cleanliness of all personnel, each shift, conducts weekly inspections of the entirety of the food service department, and puts precautions in place to ensure that there is not cross-contamination of food items. [*Id.*]. Equipment is maintained in a safe and sanitary manner, and it is washed and rinsed after each use. Offenders preparing food are monitored and supervised at all times by TDCJ staff, and the food is kept and prepared in a sanitary manner. [*Id.* at 3].

Plaintiff does not controvert this evidence and does not raise a fact issue that he was subjected to contaminated food at the Eastham Unit. Further, because he does not plead facts to show that any official was deliberately indifferent regarding the environmental conditions in his cell(s) at the Eastham Unit, his claims regarding unsanitary conditions at the Eastham Unit must be dismissed.

### 8.      **Claims against other Defendants**

Plaintiff names 26 defendants in this lawsuit, but he does not allege sufficient facts to show the personal involvement of the following defendants in any action that could constitute a constitutional violation: Taylor J. Greedis; Henry J. Vickers, Tawardras Barfield; Dwight D. Summerville; Eula C. English; Dale Sanchez; Eris S. Vasquez; Kimberly K. Striblin; Salvador Villanueva; Trevor A. Payne; and John D. Dunn. Personal involvement is an essential element of a section 1983 lawsuit, and a plaintiff must plead sufficient facts to state a plausible claim against each defendant. *See Murphy*, 950 F.2d at 292 (holding that personal involvement is an essential element of a section 1983 claim); *Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Because Plaintiff pleads no facts indicating what actions or omissions each

of these defendants committed against him that violated his constitutional rights, his claims against them must be dismissed for failure to state a claim for which relief may be granted.

## IV.  CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.  The *Martinez* report, which has been construed as a motion for summary judgment (Doc. No. 43), is **GRANTED** as to Plaintiff's medical deliberate indifference claims against medical-provider Defendants James S. Coleman, Elizabeth Ngassa, Misty Cockerham-Williams, and Mark Roberts; Plaintiff's claims against Kentrius L. Lockhart regarding mail; and claims against Estelle library staff for access to legal materials; and all of those claims are **DISMISSED** with prejudice.

2.  Plaintiff's claims against Michael C. Wonderluch, Taylor J. Greedis, Henry J. Vickers, Tawardras Barfield, Dwight D. Summerville, Eula C. English, Dale Sanchez, Eris S. Vasquez, Kimberly K. Striblin, Salvador Villanueva, Trevor A. Payne, John-Michael K. Price, Delores S. Washington, Kate Buckmaster, and John D. Dunn are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(d)(2) for failure to state a claim for which relief may be granted.

3.  Plaintiff's retaliation claims against Sergeant Calvin Weller, Warden Charles Landis, Captain Curtis D. Bridges, Correctional Officer Teliferio Williams, Jr., Correctional Officer Kayana N. Bradford, and Correctional Officer Cornelius R. Dickey remain for adjudication.

4.  Plaintiff Lawrence C. Williams's motions for summary judgment and for a medical pardon [Doc. Nos. 53, 59, 81] are **DENIED**.

5.  Plaintiff's motions requesting leave to amend [Doc. Nos. 52, 54, 55, 62, 64, 66, 67, 69,

75, 79], to which he did not attach a proposed amended complaint, are **DENIED**. *See* Doc. No. 16 ¶ 6.

6.  Plaintiff's motions for appointment of counsel [Doc. Nos. 56, 76] are **DENIED** at this time, because Plaintiff does not show that exceptional circumstances exist that would justify the appointment of counsel in his case. *See Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007); *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982).

7.  Plaintiff's motions for a preliminary injunction and extensions to a preliminary injunction [Doc. Nos. 18, 29, 48, 60, 65] are **DENIED as MOOT**.

8.  Plaintiff's motion for the entry of an order [Doc. No. 58] is **DENIED as MOOT**.

9.  Plaintiff's motion to compel discovery [Doc. No. 71] is **DENIED**.

10. Plaintiff's motion for a hearing [Doc. No. 80] is **DENIED.**

11. All other pending motions, if any, are **DENIED** at this time.

12. Service of process to defendants Landis, Bridges, Weller, Teliferio Williams, Jr., Bradford, and Dickey will be ordered by separate order.

The Clerk shall send a copy of this Order to the parties of record.

SIGNED at Houston, Texas, this ___17___ day of January, 2019.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE